UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH C. MAGNEY,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF HUMBOLDT, et al.,<br><br>    Defendants. | Case No. 17-cv-02389-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 66, 67 |

Pending before the Court are two motions to dismiss Plaintiff Judith Magney's first amended complaint: one filed by the County of Humboldt ("the County"), Humboldt County Board of Supervisors ("the Board"), Carolyn Ruth, Jeff Blanck, Blair Angus, Natalie Duke, Rosy Provino, Amanda Winstead, and Kelli Schwartz (collectively, "County Defendants"), *see* Dkt. No. 67 ("County Mot."); and the other filed by Shirley Hillman and Heather Ringwald (collectively, "APS Defendants"), Dkt. No. 66 ("APS Mot."). *See also* Dkt. No. 65 ("FAC"). Defendants[1] filed the motions on April 10, 2018. On April 24, 2018, Plaintiff filed responses to the motions. Dkt. Nos. 68 ("County Opp."), 69 ("APS Opp."). Defendants submitted replies on May 1, 2018. Dkt. Nos. 72 ("County Reply"), 73 ("APS Reply"). The Court held a hearing on the motions on November 15, 2018. *See* Dkt. No. 77. After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

**I. BACKGROUND**

Plaintiff asserts twelve claims in the FAC. Plaintiff sets forth three of these claims on behalf of her deceased husband Dick Magney under 42 U.S.C. §§ 1983 and 1988, based on

---

[1] "Defendants" refers collectively to County and APS Defendants.

1  allegations that Defendants, in their official and individual capacities, acted unconstitutionally in
2  refusing to, and conspiring to refuse to, implement Mr. Magney's Advanced Health Care Directive
3  ("AHCD"). FAC ¶¶ 159–75, 218–29 (claims 1–2, 10). Plaintiff also asserts a representative claim
4  based on Defendants' related policy, custom, or practice of unconstitutionally "countermanding
5  AHCDs that the County disagrees with." FAC ¶¶ 240–60 (claim 12, the "*Monell* claim"); *see*
6  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiff sets forth seven
7  more representative claims for violations of Mr. Magney's due process rights, based on
8  Defendants' alleged bad faith filing of applications, petitions, and declarations to obtain temporary
9  and probate conservatorship over Mr. Magney's person and/or estate. FAC ¶¶ 176–212 (claims 3–
10 9). Finally, Plaintiff asserts one claim on her own behalf under Sections 1983 and 1988, alleging a
11 violation of her constitutional right "as her husband's legal medical surrogate under his AHCD" to
12 execute his end-of-life decisions. FAC ¶¶ 230–39 (claim 11).

Plaintiff filed the FAC after the Court's prior order granting Defendants' motions to dismiss the complaint. *See* Dkt. No. 64 ("Dismissal Order").[2] In its Dismissal Order, the Court concluded that Plaintiff failed to plead with adequate specificity unlawful conduct falling within the applicable statute of limitations period, or a cognizable harm based on a continuing violation theory. *See* Dismissal Order at 5–6; *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). The Court, however, granted Plaintiff leave to amend her claims. *Id.* at 7.

## II. DISCUSSION

Moving to dismiss Plaintiffs' amended complaint, County Defendants argue that (1) Plaintiff's individual and representative claims are time-barred by the applicable statute of limitations; (2) Plaintiff is judicially estopped from bringing her representative claims; (3) Plaintiff fails to assert sufficient facts to support her *Monell* claim against Defendant Blanck and several

---

[2] The Court detailed the factual background in its Dismissal Order, and incorporates those unchanged facts and the legal analysis from the Dismissal Order here. In this order, the Court only discusses the facts and legal standards as necessary to address the new issues raised in the first amended complaint and the renewed motions to dismiss. The Court accordingly **DENIES AS MOOT** the parties' respective requests for judicial notice, Dkt. Nos. 70, 67-1; 66-1, as the Court has already taken judicial notice of the existence of relevant publicly available documents. *See* Dismissal Order at 4 n.4. To the extent that the parties seek notice of new documents, the Court does not rely on those documents for its disposition.

2

1  other County Defendants; and (4) qualified immunity precludes Plaintiff's claims against the
2  individually named County Defendants. APS Defendants move to dismiss the FAC on similar
3  grounds, arguing that Plaintiff's claims are time-barred, that qualified immunity precludes
4  Defendant Ringwald's liability, and that Defendant Hillman, as a matter of law, cannot be liable in
5  her official capacity under *Monell*.

### A. Statute of Limitations

Relying on *Knox*, Defendants argue that Plaintiff's claims are "entirely premised on injuries sustained by Mr. Magney on or before April 22, 2015" when the Humboldt County Public Guardian, Defendant Kelli Schwartz, filed its most recent appointment petition. *See* County Mot. at 7–9, 12–13; APS Mot. at 14–16; FAC ¶ 23; 260 F.3d at 1013. In addition, County Defendants contend that any conduct taken by individual Defendants after April 26, 2015 is not actionable because absolute immunity applies when similarly situated county officials act pursuant to court orders, or otherwise engage in judicial or quasi-judicial functions. *See* County Mot. at 11–12.

Though the Court agreed with Defendants' first premise in dismissing Plaintiff's prior complaint, the FAC sufficiently specifies, at this stage, harms from conduct occurring within the applicable statute of limitations period (that is, after April 26, 2015). *See* Dismissal Order at 4–5. For instance, Plaintiff now claims that at a hearing on April 30, 2015, Plaintiff demanded that Defendants stop medicating Mr. Magney against his will, in violation of his AHCD, and against the authority of his legal surrogates. FAC ¶¶ 116–17. Plaintiff also allegedly informed the state court that Defendants fraudulently obtained conservatorship over Mr. Magney, and medicated him against his will. *See id.* In addition, Plaintiff now asserts in detail how several representations made by Defendants on May 18, 19, 20, 21 and 22, 2015, during a trial regarding the First Amended Conservatorship petition, led first to further judicial investigation into Mr. Magney's mental state, and then to a finding that Mr. Magney had legal capacity on May 22, 2015. *See* FAC ¶¶ 119–31. These allegations, when read in the light most favorable to Plaintiff, describe in sufficient detail discrete wrongs that themselves plausibly suggest independent constitutional violations. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012). As in *Pouncil*, Plaintiff's specific demands

3

on April 30, 2015 and Defendants' failure to take responsive, corrective actions comprise, when construed in Plaintiff's favor, discrete, individualized acts that "began the running of the statute of limitations anew." 704 F.3d at 580–82; *see Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003).

Plaintiff's allegations regarding APS Defendants survive for similar reasons. For instance, the FAC asserts that Defendant Ringwald contributed to the Capacity Declaration-Conservatorship (form GC335) ("Capacity Declaration"), upon which Defendants allegedly relied in bad faith to obtain a conservatorship over Mr. Magney's person or estate. *See* FAC ¶¶ 209, 211–12, 214. Plaintiff also alleges that the APS Defendants and individually named County Defendants jointly acted affirmatively in furthering these constitutional violations and "failed to cease and/or forestall violations of Plaintiffs' constitutional rights, after their fraudulent evidentiary showing and misleading the court in Ex Parte proceedings. . . ." FAC ¶¶ 220–24

County Defendants argue that absolute immunity applies and precludes their liability for in-court conduct. But Defendants acknowledge that "courts have not extended absolute immunity where evidence is fabricated or false statements are made under penalty of perjury . . . ." County Mot. at 11–12. Though County Defendants subsequently state (without citation or further explanation) that their conduct does not rise to "that level," the gravamen of the FAC is Defendants' allegedly fraudulent judicial representations. *See, e.g.*, FAC ¶ 116 ("Plaintiff informed the court that it issued an unlawful order and that Attorney Defendants and Defendant Schwartz failed to apprise the court that it had no power to interfere with Mr. Magney's AHCD . . . ."); County Opp. at 11–12. Based on the nature of Plaintiff's allegations, which are sufficiently detailed at this stage, Defendants are not absolutely immune from liability.[3]

**B. Qualified Immunity**

County and APS Defendants assert that qualified immunity prohibits liability as to the

---

[3] The Court does not need to decide whether Plaintiff is judicially estopped from arguing that Mr. Magney was legally incapacitated from March 13, 2005 to May 22, 2015 given that Plaintiff adequately states cognizable conduct falling within the applicable limitations period. *See* County Mot. at 13–15; APS Mot. at 12–14. Furthermore, Plaintiff does not contend in her opposition that equitable estoppel applies. *See* County Opp. at 5 n.2.

4

individual Defendants because Plaintiff cannot show (1) a violation of a constitutional right, and (2) that the right was clearly established at the time of Defendants' alleged misconduct. *See* County Mot. at 22; APS Mot. at 16–21; *White v. Pauly*, 137 S. Ct. 548, 551 (2017). The Supreme Court has instructed that while its "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate" and that the right must be "particularized to the facts of the case." *White*, 137 S. Ct. at 551 (internal quotations, alterations, and citations omitted). Put differently, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the officer] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity claims at the motion to dismiss stage present unique challenges for courts. To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And yet, "defendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has stressed that qualified immunity is broadly construed to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions," such that "all but the plainly incompetent or those who knowingly violate the law" are protected. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Addressing this tension, the Ninth Circuit has explained that a complaint survives a qualified immunity defense at the motion to dismiss stage if it "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *Keates*, 883 F.3d at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992)). But even if a qualified immunity claim survives dismissal, that result "sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions." *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)).

5

Plaintiff overcomes Defendants' qualified immunity defense at this stage. As to the existence of a constitutional right, the Fourteenth Amendment protects persons against the deprivation of life, liberty, or property without due process of law. And in *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990), the Supreme Court explained that one such liberty interest protected by the Due Process Clause is an interest in medical autonomy. As the Court stated: "The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Id.* at 278. Based on the facts before it, the Court "assume[d] that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." *Id.* at 279. The Ninth Circuit has reaffirmed the Court's recognition of "fundamental rights to determine one's own medical treatment," "to refuse unwanted medical treatment," and "a fundamental liberty interest in medical autonomy." *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014), *as amended* (Sept. 2, 2014) (citing *Cruzan ex rel. Cruzan*, 497 U.S. at 278, *Washington v. Glucksberg,* 521 U.S. 702, 724 (1997), and *Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 851 (1992)). Given that competent persons have a constitutionally protected liberty interest in medical autonomy, the Fourteenth Amendment protects individuals from its deprivation without due process of law. *See Cruzan ex rel. Cruzan*, 497 U.S. at 279.

The parties do not dispute that *Cruzan*'s fundamental liberty interest in medical autonomy—and in turn the constitutional right against its deprivation without due process of law—was clearly established at the time of any alleged misconduct at issue in this case. Rather, Defendants argue that *Cruzan*'s holding does not fit "the particular context of the case." County Reply at 13. County Defendants argue that *Cruzan*'s holding "does not have any application to the specific facts of this case, which involve the COUNTY Defendants' decision to investigate the suspected elder abuse of Mr. Magney at the hands of the Plaintiff." *Id.* But those are not the facts alleged in the FAC. As alleged, a competent adult exercised his fundamental liberty interest in medical autonomy by making an end-of-life medical treatment plan in an AHCD. And as alleged, the process by which Defendants challenged, and ultimately countermanded, Mr. Magney's AHCD—and thus deprived him of his fundamental liberty interest—involved intentionally

6

1  misleading a court. *See, e.g.*, FAC ¶¶ 5–10.

2  At this stage, the Court must accept all allegations in the FAC as true and construe the pleadings in the light most favorable to the Plaintiff. From that perspective, the Court finds that Plaintiff has adequately pleaded "factual content that allows the court to draw the reasonable inference" of the requisite fit between the allegations in this case and existing precedent that clearly established the unconstitutionality of certain methods of depriving individuals of their liberty interests. *See Ashcroft*, 556 U.S. at 678. To be clear, the constitutional right at issue here is the right against the deprivation of one's fundamental liberty interest in medical autonomy without due process of law. Put differently, the issue concerns the process of deprivation and not simply the deprivation itself. Plaintiff alleges here that County Defendants intentionally deceived a tribunal in depriving the Magneys of their rights. The Court thus cannot conclude at this stage as a matter of law that intentionally misleading a court in furtherance of countermanding an AHCD—as Plaintiff alleges—could never violate the Due Process Clause. *See Briscow v. LaHue*, 460 U.S. 325, 326 n.1 (explaining that "[t]he Court has held that the prosecutor's knowing use of perjured testimony violates due process").

Nor can the Court say as a matter of law at this stage that it was not "clear" whether "a reasonable official would understand" that intentionally deceiving a tribunal to countermand a person's AHCD violates that person's right not to be deprived of his liberty interest in medical autonomy without due process of law. *See Anderson*, 483 U.S. at 640; *see also* Compl. at 5 ("No reasonable person nor government agency would have taken the course chosen by . . . misleading the lower courts as to the facts and law, and omitting material facts and law from the court . . . ."). The Ninth Circuit has repeatedly held that where an official deprives a person of his liberty through judicial deception, "the shield of qualified immunity is lost." *See Chism v. Washington State*, 661 F.33 380, 393 (9th Cir. 2011) (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991)); *see also Keates*, 883 F.3d at 1240 (involving allegations of deliberately false statements during juvenile court proceedings); *Vierra v. Nuti*, 659 F. App'x 420, 421–22 (9th Cir. 2016) (involving an officer who allegedly fabricated evidence supporting detention).

This Court is mindful of the challenges that arise at the intersection of the pleading

standard and the "low bar" threshold for establishing qualified immunity. *See Keates*, 883 F.3d at 1235. But at this stage, the Court finds that the operative complaint adequately pleads at least "one allegation of a harmful act that would constitute a violation of a clearly established constitutional right." *See Keates*, 883 F.3d at 1235.

### C. Sufficiency of Plaintiff's *Monell* Claim Under Rule 12(b)(6)

Finally, County Defendants contend that Plaintiff's allegations are inadequate to state a *Monell* claim against Defendant Blanck, the County, and other individually named County Defendants in their official capacities. County Mot. at 18–21. According to County Defendants, Defendant Blanck should be dismissed from this action without leave to amend because he was not employed during the time period alleged in the FAC. *Id.* at 17. In addition, APS Defendants argue that Hillman cannot be liable because she does not possess final policymaking authority. APS Mot. at 21–23 (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

To plausibly state a *Monell* claim, Plaintiff must allege unconstitutional conduct attributable to (1) an official municipal policy, *Monell*, 436 U.S. at 694; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68 (1970)); (3) the decision of an official with "final policymaking authority," *id.* at 123; or (4) a "failure to train [that] amounts to deliberate indifference to the rights of persons," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). There is no *respondeat superior* liability under § 1983. *See Monell*, 436 U.S. at 691. In turn, a government entity is not liable under *Monell* simply because it employs a person who violated a plaintiff's rights; rather, the plaintiff must adequately allege facts that show "personal participation by the defendant." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Moreover, claims based on allegedly unconstitutional conduct attributable to official policy or custom must show that the official policy or custom "was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012). At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but [must] contain

8

sufficient allegations of underlying facts" so as to provide the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

As an initial matter, *Monell* liability necessarily requires an underlying constitutional violation. And how a plaintiff articulates the alleged underlying constitutional violation will frame the *Monell* inquiry, because a municipality's alleged wrongdoing—be it an official policy, an unwritten custom or policy, the decision of a final policymaker, or a failure to train—must have caused the particular constitutional violation. *See Tsao*, 698 F.3d at 1146. Here, Plaintiff alleges *Monell* liability based on a custom or policy of countermanding AHCDs and/or a failure to train. *See* FAC ¶ 17. Significantly, Plaintiff alleges that individual officers misled a court in furtherance of the general custom or policy of countermanding AHCDs.

Turning first to the custom or policy inquiry, a plaintiff must allege facts demonstrating unconstitutional conduct attributable to a pervasive, long-standing practice with the force of law to survive at the motion to dismiss stage. *See City of St. Louis*, 485 U.S. at 127. Plaintiff alleges a policy or custom of countermanding AHCDs. *See* FAC 245–46. Simply challenging AHCDs, however, is not unconstitutional. *See Cruzan*, at 279; *see also* Cal. Prob. Code § 4766 (setting forth the procedure for filing a petition with the state superior court to determine whether the authority of an agent listed in an AHCD should be terminated). To render the challenging of AHCDs unconstitutional, a municipality's method of challenging AHCDs must violate patients' due process rights. *Id.* And here, the unconstitutional method of challenging AHCDs pled by Plaintiff is County employees misleading a tribunal. But Plaintiff does not plead a long-standing practice of misleading tribunals. Put plainly, Plaintiff alleges that the County has a custom or policy of challenging AHCDs, and that in this instance employees misled a tribunal in furtherance of the custom or policy. That is not enough to survive a motion to dismiss.

Plaintiff also has not adequately pleaded a "failure to train [that] amounts to deliberate indifference to the rights of persons." *See City of Canton*, 489 U.S. at 388. A plaintiff may adequately plead objective deliberate indifference in two ways. First, there may be an obvious need for training because a constitutional violation is exceedingly likely to occur from employees

9

carrying out their duties. *Id.* at 390. Alternatively, a plaintiff may allege facts that demonstrate policymakers had constructive notice that constitutional violations were substantially certain to result, but failed to act. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989)). Focusing on the adequately alleged unconstitutional conduct—misleading a tribunal to countermand AHCDs—the Court finds that there is no obvious need to train employees not to mislead tribunals. *See Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992) ("As laid out above, *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response—to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise."). And Plaintiff has not pleaded facts demonstrating that policymakers had constructive notice that misleading a tribunal was substantially certain to result from a broader policy of challenging AHCDs. *See City of Canton*, 489 U.S. at 396. Plaintiff relies in large part on a statement by one employee that "Mr. Magney's AHCD was not the first the County challenged." FAC ¶ 246. But again, simply challenging AHCDs is not unconstitutional. And claiming that the County previously challenged AHCDs is not the same as alleging constructive notice to policymakers that employees may mislead tribunals.

Under the circumstances, the Court also holds that leave to amend Plaintiff's *Monell* claim would be futile. When the Court asked Plaintiff's counsel at the hearing on this motion what facts she might add to bolster the *Monell* claim if afforded the opportunity to amend the FAC, counsel provided none. For this reason, Plaintiff's *Monell* claims are **DISMISSED WITH PREJUDICE**.

### III. CONCLUSION

For these reasons, the Court **GRANTS** the motions to dismiss Plaintiff's *Monell* claims with prejudice, and otherwise **DENIES** the motions.

The Court further **SETS** a Case Management Conference ("CMC") for Tuesday, January 15, 2019 at 2:00 p.m. The parties must submit an initial joint CMC statement with a proposed

10

case schedule by January 8, 2019.  *See* Civ. L.R. 16-1.

**IT IS SO ORDERED.**

Dated: 12/10/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge